IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LEROY MAGANA,                          §
(Reg. #81620-179)                      §
        Plaintiff,                 §
VS.                                    §          CIVIL ACTION NO. H-08-2899
                                       §
CHRIS STRICKLAND, *et al.,*            §
        Defendants.                §

## MEMORANDUM AND OPINION

LeRoy Magana, a federal prison inmate, filed this suit in September 2008, alleging that he was subjected to excessive force and denied adequate medical care while he was incarcerated at the Joe Corley Detention Facility ("JCDF") in Texas, waiting transfer to a Federal Bureau of Prisons facility.  Proceeding *pro se* and *in forma pauperis*, Magana sued the following JCDF employees: Strickland, the warden; disciplinary officers Sparks and Bingham; and compliance officer Dickey. Magana also sued The GEO Group, Inc., which operates the JCDF.  The defendants have moved for summary judgment, (Docket Entry No. 26), and Magana has responded.  (Docket Entry No. 27). Based on the pleadings, the motion and response, the summary judgment record, and the applicable law, this court grants the defendants' summary judgment motion.  Final judgment is entered by separate order.  The reasons for this ruling are stated below.

## I.    Background

In addition to the allegations in his complaint, Magana provided a detailed statement in response to this court's order for a more definite statement.

In May 2008, Magana was convicted of bank fraud and alien smuggling in the United States District Court for the Southern District of Texas in the McAllen Division.  He was sentenced to concurrent 42-month sentences. (Criminal Action Numbers 7:07-CR-00919-1 & 7:07-CR-01040-1).

In his complaint in this case, Magana alleged that in the afternoon of September 2, 2008, a disturbance occurred near his assigned dormitory in the JCDF. Magana was not involved. After the incident, Warden Strickland ordered all inmates to lie on their mattresses until further notice. Warden Strickland also ordered the suspension of telephone and television access. Magana and other inmates protested, asking that their telephone and television privileges not be curtailed because they had not been involved in the disturbance. Magana alleged that Warden Strickland and Bingham became irate and berated Magana with racial slurs such as "wetback." Magana was offended by the derogatory language and demanded an apology. Dicky and Sparks came onto the scene soon after that.

Magana alleged that to prevent Warden Strickland from spraying him with a chemical agent through the food slot of the dormitory door, he blocked the door and covered the opening of the food slot with a pillow. Magana alleged that he tried to talk to Warden Strickland, Bingham, Dickey, and Sparks while he blocked the food slot. Magana alleged that Sparks forcibly seized the pillow from him and that other defendants sprayed him and other inmates. Magana alleged that the spray caused pain, respiratory difficulty, eye and skin irritation, and swelling of his face, neck, and abdomen.

Magana alleged that Strickland, Sparks, Bingham, and Dicky forcibly restrained him and other inmates. Magana was initially escorted from the dormitory to the JCDF infirmary, but Warden Strickland ordered that he be escorted to segregation without treatment. Magana verbally protested. He alleged that Sparks threw him to the concrete floor and landed on top of him, uttering racial slurs. Magana was in handcuffs. Magana alleged that he fell heavily on his back and injured his spine and ribs.

Magana alleges that he was taken to a solitary confinement cell. He alleged that he was not

provided with clean clothing and had to continue wearing the clothes that had been saturated with the chemical spray.

Magana received a medical examination nine days later, after filing a grievance. The examination showed bruising. On September 9, 2008, Magana was provided with Bengay and Ibuprofen and Metamucil (because he complained that the pain in his ribs made it difficult to use the toilet). Magana alleged that he currently feels much better but lacks his former upper body strength. Magana alleged that he never received a disciplinary case, but one was "stored in the computer system." Magana sought compensatory damages of $25,000 and punitive damages of $15,000.00 from each defendant.[1]

The defendants moved for summary judgment on the basis that the undisputed evidence in the summary judgment record show no basis for Magana to recover. The defendants submitted the following summary judgment evidence with affidavits providing the necessary authentication:

(A)    documents relevant to Magana's claim, including:

   (A-2)   Magana's Presegregation History and Physical Medical Examination form dated 9/02/2008;

   (A-3)   Magana's Segregation Daily Evaluation – Medical Department forms;

   (A-4)   Magana's medical "Progress Notes" from 9/6/2008 through 9/10/2008;

   (A-5)   Magana's radiology report dated 9/12/2008; and

(B)    a DVD recording of the two September 2, 2008 use-of-force incidents.

---

[1]

      Magana also sought an injunction requiring his transfer to the Federal Bureau of Prisons. Magana was later transferred to the United States Penitentiary in Allenwood, Pennsylvania. (Docket Entry No. 24). His request for an injunction is moot.

(Docket Entry No. 26).

This court has reviewed the DVD recording of the use-of-force incidents, the use of the chemical spray and the alleged "body slamming" in the hallway outside the infirmary. (Docket Entry No. 26, Defendants' Motion for Summary Judgment, Ex. B). The following summarizes the DVD recording, with citations to the time elapsed on the DVD.

(1)     00:01:45 - guards are in a dormitory area ordering inmates to turn off the television and get on their bunks. Magana is not in this dormitory.

(2)     00:02:30 -  guards are continuing to order inmates to get on their bunks.

(3)     00:04:41  - several guards and inmates are in the hallway.

(4)     00:04:51 - guards are walking down the hallway and ordering inmates in the dormitories to get on their bunks.

(5)     00:04:59 - Magana, who is not wearing a shirt, is standing at the door to his dormitory. He pushes the door and can be seen talking through the door.

(6)     00:05:12 - Magana uses a pillow to block the food slot in the door. Guards and staff try to find the key for the food slot that Magana is blocking.

(7)     00:05:42 - a guard sprays the dormitory with a chemical agent.

(8)     00:05:53 - Magana goes to the showers in the dormitory.

(9)     00:06:11  - Magana leaves the showers.

(10)    00:06:53 - Magana sits on bunk 6.

(11)    00:08:00  - Magana is handcuffed.

(12)    00:09:54 - Major Bingham provides a brief summary of the use of chemical agent. Bingham states that he ordered inmates to "rack up." The inmates refused several

4

orders to do so.  Magana used a pillow to obstruct the food slot and another inmate tried to use a mattress to block the food slot.  Major Bingham reported that the officers removed the pillow Magana was using and Warden Strickland fired one canister of chemical agent.  All inmates were soon secured.

(13)   00:10:37  - a guard orders that Magana be separated from the others.

(14)   00:12:04  -  Magana is in the infirmary.

(15)   00:12:34  - a nurse speaks to Magana.

(16)   00:15:37  - a guard calls for the video camera in the hallway.

(17)   00:15:40  - Magana is in the hallway on the floor lying on his side.  A guard is straddling Magana.  Two other guards are holding Magana's hands and feet.

(18)   00:16:07  - Lieutenant Brian reports that Magana began resisting.

(19)   00:17:52  - Magana is secured in a segregation cell.

(20)   00:19:30  - guards remove Magana's leg irons.

(21)   00:19:58   - guards remove Magana's handcuffs through the food slot of the segregation cell door.

Magana moved to compel the defendants to produce the contents of the DVD onto a video cassette.  (Docket Entry No. 29).  He asserted that he could not play the DVD.  His motion is properly analyzed under Rule 56(f), which states:

> If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained,

5

depositions to be taken, or other discovery to be undertaken; or

(3) issue any other just order.

FED. R. CIV. P. 56(f).

Rule 56(f) authorizes a district court to order a continuance to permit additional discovery if the nonmovant shows that it "'cannot for reasons stated present by affidavit facts necessary to justify the party's opposition.'" *Adams v. Travelers Indem. Co. of Conn.,* 465 F.3d 156, 162 (5th Cir. 2006) (quoting *Wichita Falls Office Assoc. v. Banc One Corp.,* 978 F.2d 915, 919 (5th Cir. 1992)). In asking for additional time for discovery under Rule 56(f), the nonmoving party must show why additional discovery is necessary. *Id.* (citing *Beattie v. Madison Cnty. Sch. Dist.,* 254 F.3d 595, 605 (5th Cir. 2001)). The nonmoving party "may not 'simply rely on vague assertions that additional discovery will produce needed, but unspecified facts.'" *Id.* (citing *Brown v. Miss. Valley State Univ.,* 311 F.3d 328, 333 n.5 (5th Cir. 2002)). "'If it appears that further discovery will not produce evidence creating a genuine issue of material fact, the district court may, in the exercise of its discretion, grant summary judgment.'" *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 364 F.3d 274, 305 (5th Cir. 2004) (quoting *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1442 (5th Cir. 1993)).

Magana's inability to view the DVD does not justify his failure to respond to the summary judgment motion. Magana could have responded to the defendants' motion by describing what happened to him. Indeed, Magana has already provided descriptions of what he did and what he asserts the officers did. In their motion for summary judgment, the defendants refer to a segment of the DVD that shows Magana using a pillow to block the food slot. (Docket Entry No. 26, Defendants Motion for Summary Judgment, p. 4). In his complaint and more definite statement,

Magana stated that he used a pillow to block the food slot, after protesting an order from the Warden and after refusing to comply with a subsequent order to lie down on his bunk.  Magana stated that he blocked the slot to prevent the defendants from spraying the chemical agent into the room. (Docket Entry No. 1, Complaint, p. 4).  Magana did not need a video version of the DVD to be able to respond to the summary judgment motion.  Magana's motion to compel discovery, construed as a motion for a continuance, (Docket Entry No. 29), is denied.  The summary judgment evidence is analyzed under the applicable legal standards.

## II.      The Legal Standards

### A.      Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).   If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'– that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for

summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B.    Qualified Immunity

The defendants assert that as a matter of law, they are entitled to qualified immunity because Magana failed to allege a constitutional violation and because the undisputed evidence shows that their actions were objectively reasonable in light of clearly established law.  (Docket Entry No. 25, p. 2).  The defendants timely asserted qualified immunity in their original and amended answers. (Docket Entry Nos. 23 & 25).   Once a government employee pleads the affirmative defense of qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the government employee's allegedly wrongful conduct violated clearly established law.  *Bazan v. Hidalgo Cnty.,* 246 F.3d 481, 489 (5th Cir. 2001).  This requires the plaintiff to plead "claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal,* 75 F.3d 190, 195 (5th Cir. 1996).

Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Flores v. City of Palacios,* 381 F.3d 391, 393-94 (5th Cir. 2004). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mangieri v. Clifton,* 29 F.3d 1012, 1017 (5th Cir. 1994) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)).

In reviewing a motion for summary judgment based on qualified immunity, a district court considers whether a federal statutory or constitutional right would have been violated on the facts alleged. *Saucier v. Katz,* 533 U.S. 194, 200 (2001); *Aucoin v. Haney,* 306 F.3d 268, 272 (5th Cir. 2002). A court also considers whether the defendants' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores,* 381 F.3d at 395 (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). If the law was clearly established at the time of the incident, the court must decide whether the defendant's conduct was objectively reasonable. *Aucoin,* 306 F.3d at 272. Even if the government official's conduct violates a clearly established right, a defendant is entitled to qualified immunity if his conduct was objectively reasonable. *Hernandez ex. rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.,* 380 F.3d 872, 879 (5th Cir. 2004). Courts are free to consider whether the officers' conduct was objectively reasonable under clearly established law without first deciding whether the facts show a constitutional violation. *See Pearson v. Callahan,* ---U.S. ----, 129 S. Ct. 808, 818 (2009) ("On reconsidering the procedure required in *Saucier,* we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.").

9

### III.    The Use of Force Claims

Magana was a convicted felon.  The Eighth Amendment is the primary source of protection against excessive use of force on convicted prisoners.  *Whitley v. Albers*, 475 U.S. 312, 327 (1986). A prison inmate alleging excessive force must show that the force used was malicious and sadistic, for the very purpose of causing harm rather than in a good-faith effort to maintain discipline. *Hudson v. McMillian*, 503 U.S. 1 (1992).   The Eighth Amendment prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson*, 112 S. Ct. at 999.  Not every push or shove violates a prisoner's constitutional rights. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033 (1973) (cited with approval in *Hudson*, 112 S. Ct. at 1000).  Although an injury must be more than *de minimis*, it need not be significant.  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (citing *Hudson*).

A court considers several factors in determining if there is a fact issue as to whether a use of force was unconstitutionally excessive.  These factors are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.  *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998); *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992).  These factors are applied to the two use-of-force incidents at issue.

### A.    The Use of the Chemical Spray

The first factor is the extent of the injuries suffered.  In *Brown v. Lippard*, 472 F.3d 384 (5th

Cir. 2006), the Fifth Circuit stated that in evaluating use of force claims, a court may look to the seriousness of the injury to determine whether the use of force could plausibly have been thought necessary, or instead showed such an unjustified infliction of harm to show a knowing willingness that it occur. In this case, Magana alleged that after he was sprayed with a chemical agent, he suffered pain, difficulty in breathing, difficulty in seeing, skin irritation, and swelling in his face, neck, and abdomen. The medical examination he received nine days later did not show any effects of the chemical spray. The defendants argue that any injury was too minor and fleeting to raise a fact issue as to an Eighth Amendment violation.

In *Siglar v. Hightower,* the Fifth Circuit considered whether an inmate's injury, alleged to have resulted from excessive force, was too minor to raise a constitutional issue. The court described the officer's conduct and injury, as follows: "[the corrections officer] twisted Siglar's arm behind his back and twisted Siglar's ear. Siglar's ear was bruised and sore for three days but he did not seek or receive medical treatment for any physical injury resulting from the incident. There is no allegation that he sustained long term damage to his ear." *Id.* at 193. The court concluded that because "Siglar's alleged injury – a sore, bruised ear lasting for three days – was *de minimis*," he had not raised a valid claim for excessive force. *Id.*

By contrast, in *Gomez v. Chandler*, 163 F.3d 921 (5th Cir. 1999), the court found a fact issue as to whether the force applied was excessive. The *Gomez* court observed that the force used against Siglar was far briefer and less intense and less calculated to produce real physical harm than that applied to Gomez. Guards allegedly knocked Gomez down so that his head struck the concrete floor, scraped his face against the floor, repeatedly punched him in the face, and kicked him in the face and head. Gomez allegedly suffered "cuts, scrapes, contusions to the face, head, and body." On this

record, the Fifth Circuit concluded that it could not say as a matter of law that Gomez's injuries were

no more than *de minimis*.  *Id*. at 924-25.

In this case, Magana's injuries consisted of temporary pain and irritation from the chemical

spray.  Magana's injuries from the brief exposure to the chemical spray are similar to those alleged

in *Siglar*, which were temporary in nature.  *Siglar v. Hightower,* 112 F.3d 191 (5th Cir. 1997).  And

the force used against Magana was briefer, less intense, and less calculated to produce physical harm

than that applied to Gomez.

The Supreme Court has recently emphasized that the core judicial inquiry when a prisoner

alleges excessive force is not whether a certain amount of injury resulted, but rather whether force

was applied in a good-faith effort to maintain discipline or maliciously and sadistically for the very

purpose of causing harm.  *Wilkins v. Gaddy,* --- U.S. ---, 130 S. Ct. 1175 (2010).  The extent of

injury is relevant to determining the amount of force applied and its purpose.  The prisoner in *Wilkins*

suffered multiple injuries, including a bruised heel, lower back pain, migraine headaches, dizziness,

depression, panic attacks, and nightmares.  He received X-rays and was prescribed medications.  In

discussing the approaches taken by different circuits, the Supreme Court observed that these injuries

would not be considered *de minimis* in the Fifth Circuit.  In this case, the degree of injury alone does

not decide whether there is a constitutional claim.  Rather than focusing on the amount of injury, the

important question is whether the force was applied in a good-faith effort to maintain discipline or

maliciously and sadistically for the very purpose of causing harm.

The second *Hudson* factor analyzes the need for using force.  Magana explained that after

a separate disturbance, prison officials had ordered all inmates to lie down on their mattresses and

to stop using the telephone and stop watching television.  Magana challenged this order because  he

had not personally been involved in the initial disturbance. After he and other inmates refused to follow the orders, he used a pillow to block the food slot in the door. (Docket Entry No. 1, Complaint, p. 4). The DVD shows that officers repeatedly ordered Magana and other inmates to lie down. The DVD shows that Magana used a pillow to block the food slot and that another inmate was preparing to use a mattress to block the food slot. The DVD shows another inmate approaching the door with a pillow in his hand. The DVD shows that guards had identified Magana as the instigator of this effort to block the food slot. The evidence provided by Magana and the defendants show that there was a reasonable basis for the officers to use the chemical spray. The second *Hudson* factor weighs in favor of the defendants.

The third *Hudson* factor involves the relationship between the need and the amount of force used. The summary judgment evidence shows that the guards had identified Magana as the instigator of the inmates' refusals to obey orders and their efforts to block the food slot. The defendants responded to the threat by extracting the pillow and spraying the chemical agent. The application of force was not clearly excessive to the need to restore discipline such that it constituted a constitutional violation. *Hudson,* 503 U.S. at 6-7. The third *Hudson* factor weighs in favor of the defendants.

The fourth *Hudson* factor concerns the threat reasonably perceived by the responsible officials. The evidence shows that the defendants reasonably perceived that Magana posed a threat to institutional safety and discipline. Magana had refused a direct order to lie down. Instead of lying down, Magana, by his own account, demanded to know why his telephone and television privileges had been suspended and blocked the food slot with a pillow, causing other inmates to become disruptive as well. The fourth *Hudson* factor weighs in favor of defendants.

The fifth *Hudson* factor concerns the efforts made to temper the severity of a forceful response. The summary judgment evidence shows that the defendants took steps to temper the severity of the response. Guards ordered the inmates to lie down on their bunks. Instead of lying down, Magana went to the door, pushed on it, and covered the food slot. Other inmates also refused to obey the order and joined in his efforts. The fifth *Hudson* factor weighs in favor of the defendants.

Here, the defendants repeatedly ordered Magana and other inmates to lie down on their bunks. Magana explains that the order to lie down on their bunk came after a separate disturbance. The defendants sprayed a chemical agent into Magana's dormitory because they believed that Magana posed a threat to institutional security. The undisputed evidence in the record shows that as a matter of law, the defendants used the chemical spray in a good-faith effort to maintain discipline, not maliciously and sadistically for the very purpose of causing harm to Magana.

In summary, the *Hudson* factors weigh against Magana. The summary judgment evidence shows that the use of the chemical spray was not malicious or sadistic. This result is consistent with other cases considering the use of chemical agents in the prison context.[2] In *Davis v. Cannon*, 91 Fed. Appx. 327, 2004 WL 362233 (5th Cir. 2004), and *Poe v. Tex. Dep't of Criminal Justice*, 306 Fed. Appx. 866, 2009 WL 101954 (5th Cir. 2009), the Fifth Circuit held that the use of chemical agents to restore order did not violate the Eighth Amendment. In *Poe*, the facts are similar to those at issue here. The inmate in *Poe* failed to obey orders "to relinquish control" of the food slot in his cell door to allow guards to secure the cell door properly. The inmate was warned that his failure to comply with orders to remove his arms from the slot would result in the use of the chemical agent

---

[2]

  The court includes copies of three unpublished opinions as attachments to this Memorandum and Opinion.

and a "move team," but he refused to comply.  The guards sprayed a chemical agent into the cell and the "move team" entered the cell and forcibly restrained the inmate.  The Fifth Circuit concluded that the inmate had failed otherwise to demonstrate a genuine issue of material fact as to whether the force used against him was clearly excessive to the need or objectively unreasonable and affirmed the grant of summary judgment.  Similarly, in the present case, Magana has failed to raise a fact issue material to determining whether the use of chemical agents violated his constitutional rights.  The defendants' motion for summary judgment on this use of force claim is granted.

## B.    The Use of Force in the Hallway

Magana alleged that Sparks threw him to the ground and used his body weight to pin Magana on his right side, injuring his ribs.  Magana's injuries were treated with pain medications.  X-rays revealed no fractures.  Again, the focus is on the purpose behind the use of force, the remaining *Hudson* factors.

The second *Hudson* factor concerns the need for the application of force.  The DVD shows that at least three officers had to assist in restraining Magana after he left the infirmary.  On the DVD, Lieutenant Bryan reported that Magana resisted the officers' efforts to escort him from the infirmary.  There is evidence of a need for force.  Magana does not identify or produce controverting summary judgment evidence.  His allegations show that he protested being escorted from the infirmary.  The second *Hudson* factor weighs in favor of the defendants.

The third *Hudson* factor, the relationship between the need and the amount of force used, also weighs in favor of the defendants.  The record shows that Magana resisted being taken from the infirmary.  The officers responded by placing Magana on the floor.  From the DVD, it appears that the defendants applied leg restraints in addition to handcuffs.  The application of force was not

15

clearly excessive to the need to restore discipline. *Hudson,* 503 U.S. at 6-7. The third *Hudson* factor weighs in favor of the defendants.

The fourth *Hudson* factor concerns the threat reasonably perceived by the responsible officials. Minutes earlier, Magana had refused to comply with orders, used a pillow to block a food slot, and had caused other inmates to become disruptive. He then protested being escorted from the infirmary. The summary judgment evidence shows that the defendants reasonably perceived that Magana posed a threat to institutional security. The fourth *Hudson* factor weighs in favor of the defendants.

The fifth *Hudson* factor concerns the efforts made to temper the severity of a forceful response. The DVD does not show Magana being escorted from the infirmary. The DVD shows that an officer came into the infirmary and asked the camera operator to come to the hallway because of a disturbance. The DVD shows Magana on the ground restrained by three guards. There is no evidence as to efforts taken to temper the severity of the response.

In *Wilson v. Taylor*, 100 Fed. Appx. 282, 2004 WL 1240514 (5th Cir. 2004), the Fifth Circuit considered similar facts. In his *pro se* complaint, the inmate alleged that an officer, who apparently was tall and weighed more than 300 pounds, violated his Eighth Amendment rights by "body slamming" him to a concrete floor and punching him in the face. This use of force followed an argument between the inmate and the officer in the cellblock. The parties disputed whether the inmate had threatened the officer before the use of force. The Fifth Circuit determined that the district court had not erred in granting summary judgment to the defendant on the basis of qualified immunity. There was summary judgment evidence showing that the inmate had suffered a more than *de minimus* physical injury or that the use of force was "repugnant to the conscience of mankind."

In the present case, the record does not raise a fact issue as to whether the defendants applied force maliciously and sadistically, for the very purpose of causing harm to Magana. Rather, the record shows that Magana protested the escort from the infirmary and was restrained. He suffered some bruising when he was taken to the concrete floor. The defendants' motion for summary judgment on this excessive force claim is granted.

## IV.    The Denial of Medical Care Claim

The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Deliberate indifference to the serious medical needs of prisoners may violate the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards and whether it is intentionally denying or delaying access to medical care. *Harris v. Hegmann,* 198 F.3d 153, 159 (5th Cir. 1999). "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference requires a showing of unnecessary and wanton infliction of pain, rising "to the level of egregious intentional conduct." *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1999); *Gobert v. Caldwell,* 463 F.3d 339, 351 (5th Cir. 2006).

A prison official may not be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan,* 511 U.S. 825, 839-40 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id.* at 837. The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer,* 511 U.S. at 838. Under exceptional

17

circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of that risk. *Id; Reeves v. Collins,* 27 F.3d 174 (5th Cir. 1994). "Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimizana,* 122 F.3d 286, 292 (5th Cir. 1997). A plaintiff must allege and raise a fact issue as to whether prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson,* 759 F.2d at 1238.

The medical records support granting the defendants' summary judgment motion. The records show that on September 2, 2008, at 2:00 p.m., Nurse Carrie Daffin performed a presegregation history and physical on Magana. She observed that his skin color was good, there were no bruises or contusions, his breath sounds were clear, and the range of motion in the upper and lower extremities was normal. The nurse determined that Magana could be admitted to administrative segregation. (Docket Entry No. 26, Defendants' Motion for Summary Judgment, Ex. A, p. 3). The records show that while Magana was in administrative segregation, medical personnel monitored him each day and made notations for the following dates: September 6, 7, 8, 9, 10, 18, 20, 21, 22, 23, 24, 25, and 26, 2008. The records show the following:

(1)     September 6, 2008:   Nurse Simmons noted that Magana was awake and oriented; no apparent distress was noted; he was ambulatory in cell; and he denied any pain.

(2)     September 7, 2008:   The nurse noted that Magana was alert and oriented; his respiration was even and unlabored; there was no apparent distress; and he was ambulatory in his cell.

(3)     September 8, 2008:   Magana was sitting at bedside; no apparent distress was noted; and he denied any pain.

(4)     September 9, 2008:   Magana was ambulatory in his cell; he complained of earache; he was in no apparent distress.

(5)     September 10, 2008:   Magana complained of pain on his right side and back since a recent altercation; he appeared well developed and well nourished and in no apparent distress; the musculoskeletal examination revealed an area that was tender to palpation along the right rib cage from fifth through eighth intercostal space ("ICS"); he had a contusion on right rib cage; x-rays were ordered; and he was prescribed Ibuprofen for thirty days.

(6)     September 11, 2008:   Medications were ordered.

(7)     September 12, 2008:   Chest x-ray revealed that the chest was normal; the ribs were intact; no fractures or other abnormalities were seen; the lungs were clear; and no pneumothorax was noted.

Magana claims that he did not receive proper care for his back and rib injuries. The summary judgment evidence shows that soon after the use of force incidents on September 2, 2008, Magana was seen by the nurse. Medical personnel monitored Magana while he was in administrative segregation. Before September 10, 2008, Magana had denied any pain, and nurses had noted that he was not in any apparent distress. Once Magana complained of pain in his ribs, medical personnel examined him, found bruises and a tender area, prescribed pain medication, and ordered a chest X-ray on September 10, 2008. The X-ray taken on September 12, 2008, was normal. Medical

personnel responded to Magana's requests and provided timely treatment.

Magana apparently claims that medical personnel should have treated his complaint of rib pain more aggressively and promptly. Complaints that more treatment should have been ordered, without more, are insufficient to raise a fact issue as to deliberate indifference because "the decision whether to provide additional treatment is a classic example of a matter for medical judgment." *Domino*, 239 F.3d at 756 (internal quotation omitted). Nor does "an official's failure to alleviate a significant risk that he should have perceived but did not"; such a failure, "while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *see also Lawson v. Dallas County*, 286 F.3d 257, 262-63 (5th Cir. 2002) (holding that "[d]eliberate indifference cannot be inferred from a prison official's mere failure to act reasonably, *i.e.*, it cannot be inferred from negligence alone").

Magana has failed to respond to the defendants' affirmative defense of qualified immunity by showing the existence of a disputed fact issue material to determining whether the defendants were deliberately indifferent to his serious medical needs. *See Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997). The defendants are entitled to judgment as a matter of law on this claim.

## V. The Claims Against the GEO Group

Magana also sued "The GEO Group, Inc. / CCA" as owner of Winn Correctional. He seeks to hold The GEO Group, Inc. liable under 42 U.S.C. § 1983 for the acts of its employees. However, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights. *See Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003)(extending municipal corporate liability under § 1983 to private prison management corporations and their employees). Magana's claims against the GEO Group are dismissed. 28

20

U.S.C. § 1915(e)(2)(B).

**VI.      Conclusion**

The defendants' motion for summary judgment, (Docket Entry No. 26), is granted. Magana's motion to compel discovery, (Docket Entry No. 29), is denied.  Any remaining pending motions are denied as moot.

SIGNED on September 20, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge